### HENDERSON COUNTY et al. v. EASTERWOOD.

### No. 11349.

Court of Civil Appeals of Texas. Dallas.
Nov. 12, 1932.

Rehearing Denied Dec. 10, 1932.

E. A. Landman and Hobson Green, both of Athens, W. M. Harris, of Dallas, and W. H. Graham, of Houston, for appellants.

Bishop & Holland, of Athens, for appellee.

JONES, C. J.

This is an appeal from an injunction suit filed in the district court of Henderson county, to have declared void a contract entered into between Henderson county, through its commissioners' court, and R. B. DeWitt and W. M. Harris, to install a plat system in Henderson county, and to collect state, county, and district delinquent taxes, and to enjoin all parties to the contract from carrying it out. Upon the trial of the case, the contract was decreed to be void and the perma-

nent injunction prayed for issued. The appeal is duly perfected to this court.

The contract was duly executed on September 21, 1931, and was to be completed in eighteen months. The statement of the terms of the contract is preceded by a long preamble, which amounts to findings of fact clearly showing the necessity for installing the plat system in Henderson county, provided for by law (article 7264a), and also for the collection of all delinquent taxes. The terms of the contract are very specific and at great length describes the work and duties of the parties employed. That portion of the contract providing for compensation to be paid for the work of installing the plat book system is as follows: "It is further agreed that for and in consideration of the skilled services and technical knowledge required to be employed by the second parties in the preparation and installation of said plat system and of the obligations devolving upon them thereunder, second parties are to receive and shall receive and be paid by First Party 15% of all delinquent taxes, collected from and after the date of this contract, except State delinquent taxes, until the sum of Eighty Thousand Dollars of County, School District, Road District, and other political subdivisions or defined District taxes that are collected through the tax collector of said county has been collected and 5% thereafter."

That portion of the contract providing for the compensation to be paid for the collection of delinquent taxes, is as follows: "For said services of second parties in performing obligations set out in paragraphs XIV and XVII, inclusive, and to enable second parties to properly perform said services and to furnish all material and supplies necessary to complete said work there shall be paid to the said second parties the penalties and interest of all delinquent taxes, except State delinquent taxes, actually collected from and after the date of this contract and during the term thereof, contingent upon the collection of said delinquent taxes, penalties and interest as and when collected until the sum of Eighty Thousand Dollars of County, road district, school district and other district delinquent taxes, penalties and interest which receive their taxes through the Tax collector of said County has been collected and five per cent. of said penalties and interest thereafter."

The contract required the contractors, DeWitt and Harris, to perform all of the work contemplated by the legislative enactments, authorizing both the installation of a plat system by a county, and the necessary work in preparing for, and the collection of, all delinquent taxes. While the state delinquent taxes would necessarily be collected as the result, yet no remuneration from the state is to be paid the contractors for such collec-

tion. In other words, the state, free of cost, is to reap all the benefits it would have done had it been required to pay from its collected delinquent taxes the compensation authorized by law. Before the contract was entered into, the commissioners' court duly requested the county attorney to proceed by law to collect the taxes, but after the expiration of thirty days the said official did nothing in this respect. Harris, one of the contractors, is a duly qualified and practicing attorney at law. The contractors had begun the work of carrying out the contract when they were restrained, first by a temporary writ of injunction, and then by the permanent injunction issued at the final trial.

The legislative enactments directly involved in the validity of this contract are here quoted. Article 7335a, effective February 17, 1930, is as follows:

"Sec. 1. No contract shall be made or entered into by the Commissioners' Court in connection with the collection of delinquent taxes where the compensation under such contract is more than fifteen per cent of the amount collected. Said contract must be approved by both the Comptroller and the Attorney General of the State of Texas, both as to substance and form. Provided however the County or District Attorney shall not receive any compensation for any services he may render in connection with the performance of the contract or the taxes collected thereunder.

"Sec. 2. Any contract made in violation of this Act shall be void."

Article 7264a, effective May 27, 1931, is as follows:

"Sec. 1. It is hereby declared the Policy of the State to adjust delinquent taxes, correct errors, to eliminate conflicts in surveys of land, and to collect the delinquent, occupation, franchise and Ad Valorem Taxes, in order to clear this State of such taxes, errors and conflicts at the earliest date possible, and to provide a system for assessors, in order to eliminate the numerous errors that now appear on the tax rolls each recurring year.

"Sec. 2. Cost of collecting delinquent taxes shall not exceed the amount of the penalty and interest, or an amount equal to such penalty and interest of all delinquent taxes collected. Any county desiring to install a tax or plat system and clear the county of errors, conflicts and unknown owners, may do so by paying not to exceed 15% of the delinquent taxes collected, which payment shall cover the cost of records and installing same.

"Sec. 3. In order to speedily carry out the provisions of this Act, the State Comptroller and the Commissioners' Court of each of the several counties may employ competent persons to do the work and to furnish the Comptroller and the Commissioners' Courts all cases where adjustment is necessary; and in all such cases the Commissioners' Court shall make proper settlement or adjustment.

"Sec. 4. This Act is not intended to change any law now in effect regarding the collection of delinquent taxes; but to be an aid to the officials in the discharge of their duties, and when the delinquent taxes in a county are adjusted, corrected and collected, the Comptroller shall take necessary steps to see that all delinquent taxes are collected within a reasonable time after they become delinquent, in order to avoid the necessity of again employing additional help."

Article 7335 specifically authorizes the commissioners' court to contract with an attorney for a consideration, to enforce the collection of delinquent taxes, provided the county attorney or the district attorney of such county fails to undertake the enforcement of such collections, after the expiration of thirty days from a written notice requesting such official to file delinquent tax suits, and no steps have been taken by such official in this respect. Article 7344 specifically authorizes commissioners' courts to contract for the plat system and for maps.

It is contended by appellee (1) that this contract is void, because the compensation allowed is in excess of that allowed by law; (2) that it is void, because it was not approved by the state comptroller; (3) that it is void, because it was not approved by the state Attorney General; (4) that it is void, because the state comptroller did not join in the employment of the contractors; (5) that it is void, because it is against the public policy of the state, which requires the state to be a party to such contract, and to pay its proportionate share of the expenses.

■ As we understand appellee's contention that the contract is void because it allows compensation greater than that authorized by law, such contention is based (a) on a provision of article 7335a, declaring that "no contract shall be made or entered into by the Commissioners' Court in connection with the collection of delinquent taxes where the compensation under such contract is more than fifteen per cent of the amount collected"; and (b) because the Legislature contemplated, by these enactments, that the state of Texas should bear its proportionate share of the expenses in collecting delinquent taxes, and, since the contract exempts the state from paying any part of the compensation allowed by its terms, thereby placing the entire burden on Henderson county, the contract is excessive. We do not believe either of these contentions can be maintained. The contract embraces two distinct and authorized undertakings by the contractors, viz.: (1) The collection of delinquent taxes, and (2) the preparation and installation of a complete

plat system, for the future use of county officials in the assessment and collection of taxes.

Section 2 of article 7264a, a later enactment than article 7335a, specifically authorizes a commissioners' court to contract for each undertaking, and specifically names the maximum amount to be paid as compensation to those who contract to perform each of such undertakings. For collecting delinquent taxes, the maximum compensation allowed is the penalty and interest allowed by statute on delinquent taxes. For installing the plat system, a maximum compensation of 15 per cent. of the delinquent tax collected is allowed. It is true that the Legislature declares that the enactment of article 7264a does not change any law now in effect, but was enacted as an aid to other laws on this subject. The provision of article 7335a, quoted above, is general in respect to the compensation allowed. The provisions of section 2 of article 7264a are specific in this respect, and must be accepted, rather than the said general provision, as declaring the intention of the Legislature. Under this contract, Henderson county is not required to pay more than the maximum compensation authorized by this statute. We do not think the contract is subject to the criticism of being excessive in either of the respects named.

■ Is the contract against the declared public policy of the state, in that it does not charge the state with any expenses of collecting the state delinquent taxes, or in the preparation of the plat system, and is not approved by the Attorney General and the comptroller. If DeWitt and Harris, contractors, did not bind themselves to collect delinquent taxes of the state, but were permitted by the contract to ignore the state's right in this respect, then the contract would be subject to the criticism made, that it was against the public policy of the state, as declared by the statutes under review, and as specifically declared by section 1, art. 7264a. We do not believe the contract offends in this respect. It is the duty of the county, through its tax collector, to collect state taxes along with its collection of county and district taxes. Although, in the matter of enforcing the payment of delinquent taxes, the county is authorized, under the conditions stated in article 7264a, to require the state to pay the compensation stated in said article, we can see no valid reason why the county cannot waive its right in this respect and collect state delinquent taxes, without exacting payment therefor. In making such contract, the county does not violate the public policy of the state in respect to collecting delinquent taxes.

■ A more serious question is raised by that provision of article 7335a, which requires that a contract entered into by a county for the collection of delinquent taxes must be approved by the state Attorney General and by the state comptroller. Appellee contends that, as this contract is not approved by the designated state officials, it is void, under the very terms of the statute authorizing it. On the other hand, appellant contends that, as no compensation is exacted from the state for the collection of the state delinquent taxes, the reason for the enactment of this provision of the statute does not exist and such provision of the statute has no application to this contract. Approval by the Attorney General of this contract was requested, and not given for the following stated reason: "In view of the fact that the contract only calls for a percentage of the county taxes and does not in any way affect delinquent State taxes, it is my opinion that the same does not require the approval of this Department, either as to substance or form, as the interest of the State is not affected thereby."

We are inclined to agree with the Attorney General in his construction of his official duty in respect to this contract. The Supreme Court of this state, in the case of Cherokee County et al. v. Odom, Tax Collector, 118 Tex. 288, 15 S.W.(2d) 538, holds that the execution of such a contract, as the one under inquiry, is within the power of the commissioners' court as county business. See, also, Commissioners' Court of Madison County et al. v. Wallace et al., 118 Tex. 279, 15 S. W.(2d) 535.

It is true that these opinions were written prior to the enactment of either article 7335a or article 7264a, and necessarily the specific question now under review was not before the Supreme Court in either case. The principle of law, however, declaring that the making of a contract for the collection of delinquent taxes is strictly county business, applies just as much to the contract in the instant case as it applied to the contract in the reported cases; also the holding of those cases, to the effect, that the commissioners' court of a county has the right to contract, independent of the state, for the collection of delinquent taxes provided such contract does not entrench upon the right of the state in this respect. We construe the effect of article 7335a and article 7264a to be that, when a county attempts to contract for the collection of delinquent taxes in part at the expense of the state, then such contract, in order to be valid, must have the approval of the two state officials designated in article 7335a, but that it was not the intention of the Legislature to require such approval when the contract, in the language of the Attorney General, "does not in any way affect delinquent state taxes."

It follows that, in our opinion, as this contract does not allow more compensation than that authorized by law, and does not affect adversely the interest of the state, its execution is a valid exercise of the power lodged in the commissioners' court, and is a valid

and enforcible contract. We therefore are of the opinion that the trial court erred in decreeing its invalidity, and in issuing the permanent writ of injunction.

It necessarily follows that this case should be reversed and here rendered in favor of appellants, decreeing the contract to be valid, and dissolving the permanent injunction, and it is so ordered.

Reversed and rendered.